1  KAREN P. HEWITT
   United States Attorney
2  JAMES P. MELENDRES
   Assistant U.S. Attorney
3  California Bar No. PENDING
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-6327

6  Attorneys for Plaintiff
   United States of America
7
                    UNITED STATES DISTRICT COURT
8
                   SOUTHERN DISTRICT OF CALIFORNIA
9
   UNITED STATES OF AMERICA,          )   Criminal Case No.  08CR0727-WQH
10                                    )
                  Plaintiff,          )   DATE:  June 23, 2008
11                                    )   TIME:  2:00 p.m.
         v.                           )
12                                    )   STATEMENT OF FACTS AND
   CHRISTIAN GUTIERREZ,               )   MEMORANDUM OF POINTS AND
13                                    )   AUTHORITIES IN SUPPORT OF
                  Defendant.          )   UNITED STATES' MOTIONS
14                                    )   IN LIMINE TO:
                                      )
15                                    )   (1)  ADMIT EXPERT TESTIMONY;
                                      )   (2)  PROHIBIT SELF-SERVING
16                                    )        HEARSAY;
                                      )   (3)  PROHIBIT REFERENCE TO
17                                    )        DEFENDANT'S HEALTH,
                                      )        FINANCES, EDUCATION,
18                                    )        AND POTENTIAL PUNISHMENT;
                                      )   (4)  PROHIBIT  REFERENCE TO
19                                    )        DEFENDANT'S "WITHDRAWAL";
                                      )   (5)  LIMIT CHARACTER EVIDENCE;
20                                    )   (6)  PRECLUDE ALL WITNESSES
                                      )        EXCEPT CASE AGENT;
21                                    )   (7)  PRECLUDE EVIDENCE OF
                                      )        DURESS AND NECESSITY;
22                                    )   (8)  PRECLUDE DEFENSE EXPERT
                                      )        WITNESS;
23                                    )   (9)  RENEWED MOTION FOR
                                      )        RECIPROCAL DISCOVERY
24                                    )
                                      )
25
   //
26
   //
27

28

I

STATEMENT OF THE CASE

On March 12, 2008, a federal grand jury in the Southern District of California returned a one count indictment charging Defendant Christian Gutierrez ("Defendant") with knowingly and intentionally possessing, with the intent to distribute approximately 1,738.68 kilograms (3,833.79 pounds) of marijuana, in violation of Title 21, United States Code, § 841(a)(1).

Subsequently, on June 4, 2008, a federal grand jury in the Southern District of California returned a one count superceding indictment charging Defendant with knowingly and intentionally possessing, with the intent to distribute approximately 1,738.68 kilograms (3,833.79 pounds) of marijuana , in violation of Title 21, United States Code, § 841(a)(1) and aiding and abetting in violation of Title 18 United States Code, § 2.

II

STATEMENT OF FACTS

On January 2, 2008, a Drug Enforcement Administration ("DEA") agent received information from a Confidential Informant that there was a significant quantity of marijuana at Defendant's residence located at 1711 Lenrey Avenue, El Centro, California. Later that same evening, DEA agents, along with officers from the El Centro Police Department, searched the residence after obtaining consent from Ricardo Figueroa-Moreno, who was living at the house at the time. Inside, the agents discovered a total of 174 bundles of marijuana in three of the four bedrooms. The total weight of this marijuana was approximately 1,738.68 kilograms. The agents later learned that Defendant signed the lease for the residence in November 2007, and paid the deposit and first month's rent using money-orders signed in his name. Defendant shared this residence with Daniel Figueroa-Moreno, Horaldo Flores, Jonathan Torres, and Christian Gutierrez.[1] According to at least one of the residents, Defendant moved out of the residence approximately two weeks prior to the January 2, 2008 seizure of the marijuana.

---

[1] These individuals are defendants in the following related cases: United States v. Daniel Figueroa-Moreno (08CR0270-H); United States v. Flores (08CR0358-WQH); and United States v. Torres (08CR0304-W).

On January 4, 2008, DEA agents contacted Defendant by telephone and asked him to come to the DEA office in El Centro. Defendant agreed and arrived that same day at approximately 12:15 p.m. with his parents. Defendant was advised by the DEA agents that he was free to leave at any time; he was not under arrest; and he could refuse to answer questions. After this advisement, Defendant stated that he moved into the Lenrey Avenue residence in mid-November 2007, and paid $1,200 per month for rent. He further stated that he was present when the marijuana was in the house and that, although air-fresheners were used to camouflage the odor, he could smell the marijuana throughout the residence. Defendant also stated that he continued to live in the Lenrey Avenue residence after he knew there was marijuana in the house. In particular, he said that he observed multiple bundles of marijuana stacked approximately three feet high. He noted that he moved out of the house at some point prior to the January 2, 2008 seizure and moved in with his parents. However, Defendant stated that we going to pay the January 2008 rent for the house because he did not want to harm his credit. He further stated that he was most recently at the house the day after Christmas and had unrestricted access to the residence. Finally, Defendant explained that the he did not report the fact that marijuana was being stored in the Lenrey Avenue residence because he did not want his friends - Mr. Figueroa-Moreno, Mr. Flores, and Mr. Torres - to get in trouble.

Defendant was later arrested at 1:15 p.m. that day. He was subsequently advised of his <u>Miranda</u> rights, which he acknowledged and invoked.

III

MEMORANDUM OF POINTS AND AUTHORITIES

A.  The Court Should Admit Expert Testimony Regarding the Identity, Wholesale and Retail Value, and the Distributable Quantity of the Drugs at Issue

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed.R.Evid. 702. The trial court has broad discretion to admit such expert testimony. <u>See, e.g.</u>, <u>United States v. Alonso</u>, 48 F.3d 1536, 1539-40 (9th Cir. 1995). An expert may base his or her opinion on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. <u>See</u> Fed.R.Evid. 703. In addition, an expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier-of-fact. <u>See</u> Fed.R.Evid. 704.

3

### 1. Identity of Substance as Marijuana

The United States intends on calling a DEA forensic chemist to testify as to the identity of the substance seized from the Lenrey Avenue residence in this case. The United States expects her to testify that laboratory examinations confirmed that the contraband was marijuana, a Schedule I Controlled Substance. This testimony bears directly on an element of the charged offense: that marijuana is a prohibited drug.

This testimony is permitted under Rule 702 of the Federal Rules of Evidence, which allows witnesses qualified as experts to testify as to scientific or technical knowledge that "will assist the trier of fact to understand the evidence." See United States v. Cruz, 127 F.3d 791, 801 (9th Cir. 1997) (DEA forensic chemist properly established as expert to identify nature of controlled substance); United States v. Burden, 497 F.2d 385, 387 (8th Cir. 1974) (forensic DEA chemist, whose educational background and experience were established, was properly allowed to testify as an expert on the various tests performed on a substance to confirm that it was marijuana).

### 2. Wholesale and Retail Value of the Marijuana

The United States also intends to present expert testimony from a DEA agent regarding the wholesale value and retail value of the marijuana seized in this case. The DEA agent has continuous contact with state and federal intelligence programs, contact with narcotics agents at the state and federal levels, contact with undercover agents who have worked closely with drug-traffickers, contact with cooperating defendants who have been or have worked with drug-smugglers, and contact with confidential informants who deal on an ongoing basis with narcotics-smuggling organizations and their tactics.

From this testimony, the United States should be allowed to argue that the value of the marijuana circumstantially shows that the defendant knew the house he resided in contained marijuana, and that he possessed it with the intent to distribute. A reasonable inference to draw from the possession of drugs with this value is that the original owners would not entrust such a valuable commodity to a complete stranger who has no idea he is in possession of the drugs. Also, the more valuable drugs are, the more reasonable it is to infer that they were meant to be further distributed to maximize sales. As knowledge

and intent are essential elements of the offenses charged, the desired expert testimony is highly probative.

The Ninth Circuit has long allowed the introduction of such expert testimony, and has long permitted counsel to argue reasonable inferences therefrom. See, e.g., United States v. Ogbuehi, 18 F.3d 807 (9th Cir. 1994). In Ogbuehi, the defendant was charged with importing about 2.5 pounds of heroin. At trial, the United States introduced expert testimony of a DEA special agent as to the estimated street retail value of the heroin. The Ninth Circuit found that such testimony was proper, and that its probative value was not substantially outweighed by any prejudicial effect. Id. at 812 ("DEA agents can testify as to the street value of narcotics, . . . and counsel can argue reasonable inferences from it") (citation omitted); see also United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (evidence of $100,000 street value of cocaine was relevant to proving the defendant's intent to distribute); United States v. Ramirez-Rodriguez, 552 F.2d 883, 885 (9th Cir. 1977) (evidence of resale value of drug probative of intent to distribute); United States v. Golden, 532 F.2d 1244, 1247 (9th Cir.1976) ("The value of the heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin and intent to distribute") (citations omitted); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (in prosecution for transporting cocaine, testimony concerning the selling price of cocaine was relevant to issue of knowledge, since it tended to refute "the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States").

### 3. Personal Use versus Distributable Amount

Finally, the United States intends to elicit expert testimony from an agent to establish that the 1,738.68 kilograms of marijuana seized from Defendant's residence is a distributable, rather than personal use amount. See United States v. Tavakkoly, 238 F.3d 1062, 1067 (9th Cir. 2001) (undisputed expert testimony that 1.35 kg of opium was inconsistent with possession for personal use was relevant to prove defendant's intent to distribute); United States v. Alatorre, 222 F.3d 1098, 1104-05 (9th Cir. 2000) (expert testimony properly admitted to establish that quantity of marijuana was distributable amount, rather than a personal use amount).

B. <u>Prohibit Self-Serving Hearsay</u>

Defendant must be precluded from introducing his own statements through the testimony of another witness, the opening statement of counsel, or argument by counsel. Any such attempt would be impermissible because those statements are hearsay. While the United States may use the statements of a defendant against him under Federal Rule of Evidence 801(d)(2) (admission by party-opponent), this Rule may not be relied upon by Defendant because he is not the proponent of the evidence and the evidence is not being offered against him (but rather on his behalf). Defendant cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination by the United States. <u>See</u> e.g., <u>United States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1987).

Nor can Defendant rely on Rule 801(d)(1)(B), which provides that a statement is not hearsay if:

> The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

A prior consistent statement is not admissible if it is introduced in the absence of impeachment. <u>See</u> <u>United States v. Navarro-Varelas</u>, 541 F.2d 1331, 1334 (9th Cir. 1976) (appellant offered to introduce and play tape recording of interview of appellant and DEA agent to reinforce appellant's credibility). Moreover, even if the declarant's testimony has been impeached, prior consistent statements are not admissible if the declarant had motive to give false information at the time that the prior out-of-court statement was made. <u>See</u> <u>United States v. DeCoito</u>, 764 F.2d 690, 694 (9th Cir. 1985) (declarant's prior consistent statement not admissible for purposes of rehabilitation if declarant had motive to lie to avoid prosecution when prior statement was made); <u>United States v. Rohrer</u>, 708 F.2d 429, 433 (9th Cir. 1983) (diagram drawn by declarant not admissible as prior consistent statement because declarant had motive when diagram was made to fabricate, that is, driving better leniency bargain with the government).

Finally, Defendant cannot rely on Rule 803(3), which provides that the hearsay rule does not exclude then existing mental, emotional, or physical condition. <u>See</u> Fed.R.Evid. 803(3). Addressing this issue in the context of a "derivative entrapment" defense, the Ninth Circuit affirmed the trial court's exclusion of testimony by a witness that the defendant had told the witness that the defendant was afraid of government agents. The court relied on the language emphasized above in Rule 803(3), holding that

6

the rule did not except the witness's testimony from the hearsay rule. See United States v. Emmert, 829 F.2d 805, 809-10 (9th Cir. 1987).

Defendant cannot introduce his own statements through the testimony of another witness or by improper reference during opening statements. Defendant is free to provide a statement from the witness stand where he would properly be subject to searching cross-examination.

### C. The Court Should Prohibit Reference to Defendant's Health, Finances, Age, Education, and Potential Punishment

Evidence and arguments concerning a defendant's health, age, finances, education, and potential punishment is inadmissible and improper.

Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Moreover, Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2003 Edition).[2] Reference to Defendant's health, age, finances, education, and potential punishment may be relevant at sentencing. However, at trial, such references are not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

### D. The Court Should Prohibit Reference to Defendant's "Withdrawal" From the Offense

Defendant is not charged with conspiracy and therefore evidence and arguments concerning any "withdrawal" from the crime is inadmissible and improper.

Again, Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Defendant is charged with possession of a controlled substance with intent to distribute it and aiding and abetting. Withdrawal is not a defense to either of these offenses. Therefore, any reference at trial to Defendant's actual or attempted "withdrawal" is irrelevant and unduly prejudicial. For these reasons, the United States hereby moves for an evidentiary ruling precluding defense counsel

---

[2] Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. See United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

7

from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "withdrawal."

      E.      <u>The Court Should Limit Character Evidence</u>

The United States anticipates that Defendant may improperly attempt to introduce testimony regarding Defendant's specific acts of prior good conduct. Testimony as to multiple instances of good conduct violates Federal Rule of Evidence 405(a). <u>United States v. Barry</u>, 814 F.2d 1400, 1403 (9th Cir. 1987); <u>Government of Virgin Islands v. Grant</u>, 775 F.2d 508, 512 (3d Cir. 1985). Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same. . . ."

A character witness can not offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant. <u>United States v. Hedgecorth</u>, 873 F.2d 1307, 1313 (9th Cir. 1989) ("[W]hile a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible"). In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit Court of Appeals has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness" and honesty is permissible. The appellate court, however, has held that asking a defense witness about the defendant's propensity to engage in a specific type of criminal activity is not allowed under Rule 404(a). See <u>United States v. Diaz</u>, 961 F.2d 1417 (9th Cir. 1992) (holding that it is impermissible to ask a character witness about the defendant's propensity to engage in large scale drug dealing).

Thus, Defendant should be prohibited from introducing testimony from any character witness about (a) a specific instance of Defendant's conduct, and (b) Defendant's propensity to be involved in drug trafficking.

      F.      <u>The Court Should Exclude Witnesses During Trial With The Exception of the United States' Case Agent</u>

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. As such, the case

8

agent's presence at trial is necessary to the United States. However, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

  G. The Court Should Preclude Evidence of Duress and Necessity

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S. 826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported

defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

      H.      <u>The Court Should Preclude Any Expert Testimony by Defense Witnesses</u>

The United States has made a request from the Defendant for reciprocal discovery. It is permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, Defendant must disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. While defense counsel may wish to call an expert to testify, Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony if he fails to disclose such information by the expert discovery deadline set by the Court.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 150 (1999). <u>See</u> <u>United States v. Rincon</u>, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); <u>see</u> <u>also</u> <u>United States v. Hankey</u>, 203 F.3d 1160, 1167 (9th Cir.), <u>cert.</u> <u>denied</u>, 530 U.S. 1268 (2000).

      I.      <u>United States' Renewed Motion for Reciprocal Discovery</u>

As of the date of the preparation of these motions, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of

Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States will object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

## IV

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that its motions <u>in limine</u> be granted.

DATED: June 9, 2008

    Respectfully submitted,

    KAREN P. HEWITT
    United States Attorney

    <u>s/James P. Melendres</u>
    JAMES P. MELENDRES
    Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0727-WQH |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| CHRISTIAN GUTIERREZ, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, JAMES P. MELENDRES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the United States' Motions in Limine, on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. William R. Burgener

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 9, 2008.

                                                s/James P. Melendres
                                                JAMES P. MELENDRES